The first case today is number 25-1648, United States v. Jose Miguel Pena de la Cruz. At this time, would counsel for the appellant please come to the podium and introduce himself on the record to begin? Good morning, your honors. Donald Lockhart for the government, and may it please the court. May I reserve two minutes for rebuttal? You may. Thank you. As the defense concedes, the default rule is that dismissals under Rule 48A are without prejudice, and it's the defendant's burden to show some form of bad faith, impropriety, or harassment or something of the like that would warrant dismissal with prejudice. The prosecution can't possibly enable a defendant to satisfy that burden. Mr. Lockhart, when you say that defense needs to show bad faith or the like, what are you relying on for that? I'm relying on the uniform view of the circuits that we cite in the blue brief. Every case that we can find from other circuits has said that the burden is on the defendant to show something like bad faith or improper government purpose. This court in Ranieri came close to saying that as well when it noted that the customary rule is that dismissals under 48A are without prejudice. And in the Suazo case, the court sort of made a glancing blow at that issue in the sense that it was describing the district court's presumption of good faith in that case. So I think there's a general recognition in the case law that it is the defense's burden. And I would note that the defense in its response brief has not pushed back at all on that point. Mr. Lockhart, the cases are not uniform in the way you describe. Some cases refer to a broader concern in the interest of justice, for example. That also seems to be a gloss on Rule 48 that some courts have adopted. Cases are not quite as uniform as you suggest. A couple points on that, Your Honor. First of all, to the extent that there is some room for dismissal with prejudice outside of the context of bad faith, impropriety, and the like, the fact is that that wouldn't speak to the burden question. In other words, even if there is some sort of residual exception which allows for dismissal with prejudice when to do otherwise would be clearly contrary to manifest public interest, to sort of paraphrase the Rinaldi formulation, it would still be the defendant's burden to show something that would fit within that exception is our position. And moreover, note that in Rinaldi, a case where the Supreme Court had before it the question of, under what circumstances may a district court outright deny a Rule 48A motion. Even Rinaldi in footnote 15 didn't squarely resolve the question of whether in that context there is room for a district court judge to deny a dismissal motion on grounds that to do otherwise would be clearly contrary to manifest public interest. It assumed for the sake of argument that a judge had that power and that on the facts of that case there was nothing to satisfy that standard. Our point in the brief is that you needn't definitively resolve in this case whether such an exception applies here because even assuming for the sake of argument that it does, there's nothing in this record which would satisfy that very high standard, clearly contrary to manifest public interest. Again, the mere fact that the government has pursued two tracks, removal and prosecution, which all seven circuits to address the question have said is permissible for us to do, and the mere fact that we have ultimately decided to go down one track and not the other, that we're taking the removal track, can't possibly enable a defendant to show that that's somehow clearly contrary to manifest public interest. So even if you posit that that may be some sort of a safety valve exception out there, the defense still loses, and that's why you don't counsel, but it seems that the, and of any effort by the defense to articulate a ground for this dismissal with prejudice outcome has adopted its own rationale, which now the defense has embraced, which is it is inimical to the interest of justice to allow the executive to proceed on this two track basis. Actually, we don't read the defense as making a developed argument supporting the district court's categorical approach. It's modified standing order, which requires dismissal with prejudice in every case where the defendant is removed. The main defense point, and actually if you look at the response brief, is to say that actually the judge in this case was not following that categorical approach. The judge actually undertook a very case specific weighing of the individual facts, and of course the record completely demolishes any sort of suggestion along those lines, because the district court made clear at every step of the way that it was implementing its own modified standing order requiring exactly this, dismissal with prejudice as soon as the government gives notice of the impending removal of the defendant and removal occurs. That's the equation that the district court judge set up in his modified standing order, and that's the equation he pursued in dismissing this case with prejudice. And I don't see the defense as defending that general system. I see them mainly claiming that the system wasn't followed here. There is at the tail end of the defense response brief a sort of a general suggestion that an interest of justice exception may still apply here, but there's no real attempt to say why the interest of justice could command the result of dismissal with prejudice in every single case where a defendant is removed. You could see why the district courts might be frustrated to have cases filed and start out and progress along some and then disappear without reason. That could be a source of some frustration to the courts. We can understand the frustration, but the frustration can't be sort of turned into a rule which says that every case of removal requires dismissal with prejudice. I think sort of to your point, what the government should be doing in these cases, and we endeavor to do it, is we try to keep the district court judges abreast when we can of developments on the removal front so that district court judges aren't needlessly spinning their wheels on deciding, pending motions and the like that may be unnecessary for them to decide because the defendant's ultimately going to be removed. The system isn't perfect, though, and sometimes we don't have notice of the removal. In this case, we did. In other cases, we haven't. When you say we, that's sort of somewhat of an issue with the district court, isn't it? Because by we, you mean the U.S. Attorney. As I understand it, sometimes the U.S. Attorney is not going to know what the immigration folks are doing on the other side of their track. There have been instances where we have not known. That's true. In the district court, I think, regarded we as not the U.S. Attorney but as the Attorney General. Well, yes. Who supervises both tracks. No, I understand that, but the mere failure for the U.S. Attorney's Office to learn that a defendant's about to be removed, we would submit, although that's not the issue in our case, is not enough for dismissal with prejudice. I mean, in an ideal world, we're communicating well with DHS and ICE, and we're able to apprise the district court when removal is imminent, but there are inevitably going to be cases where the communication doesn't take place. How is that? That surprises me that there is that gap in the communication between the two branches under the Attorney General. Because what if they remove someone after the jury's already been impaneled? What if, oh, well, if the defendant's removed after the jury's impaneled, then the double jeopardy clause prevents retrial in that situation, so we wouldn't even... How do you guard against that? What's that? How do you guard against that? Well, so I think most AUSAs, at least in our office, will make attempts to track these cases, both by talking with DHS and ICE, and through consulting. There's a DHS website which tells us something about where the defendant stands in the process of removal, and we try to do those things. I myself did it in this very case, and that's why we were able to supply the district court judge here with the pre-removal notice that he required. And I think in most cases, we will hopefully be able to do that, but if a case falls through the cracks, and that doesn't happen, that doesn't bring the case within this, what should be narrow exception to the general rule, that Rule 48A dismissals are without prejudice. The cases that recognize that the default rule is that it's without prejudice, also some of them recognize that society has an important interest in criminal prosecutions, and it should be a rare case, and a serious case, where the government is permanently barred from seeking prosecution in a given case. Also notice that... Counsel, isn't there, I mean, I think in part the district court is looking down the road a bit and saying that individuals can be deported for many reasons. They may want to come back into the country. It could be illegally. It could be legally, but that unresolved criminal charge is hanging out there, and evidence has gotten stale. There are all sorts of reasons why in the future that individual could be severely disadvantaged by the still pending criminal charge, and so looking at one of the rationales, a rationale for Rule 48 to protect the interests of the defendant from harassment in some form, that's why the district court did what it did to protect the interests of the defendant. Isn't that a legitimate consideration? Two points, Your Honor. Number one, the district court didn't say that. It didn't actually rely on any notion that this defendant or any class of defendants would be disadvantaged in some later prosecution. That's point number one. Second point, Your Honor, is that a defendant who's re-indicted, who returns to the country and finds himself re-indicted, may I finish the thought, is always free at that point to advance any number of reasons why that prosecution should be terminated. Rule 48A shouldn't be a mechanism for looking into the future with a crystal ball and deciding whether the defendant might have some claim in the future as to why the indictment should be dismissed. He'll have those remedies in the future. I just want to, I think I understand this, but in this case, the government didn't move under Rule 48A at all. Right. What happened as a technical matter is that as soon as we gave notice of the impending removal, the judge in his June 23rd order said that, well, I'm going to treat that as tantamount to a motion to dismiss without prejudice, and I'm going to, as soon as the defendant is deported, the indictment is dismissed with prejudice. Now, we haven't sort of made a separate procedural challenge to the judge's conversion of our notice of removal into a dismissal motion. We're just sort of assuming for sake of argument that that's fine, but the result is that functionally in this case, there is a dismissal motion because the district court judge said there was, and we're not disputing that. Thank you. Thank you, Counsel. At this time, would Counsel for the Appellee please introduce herself on the record to begin? Good morning, Your Honors. Judith Meisner representing Mr. Peña de la Cruz. Court talked about the, the government has argued that the defendant has an obligation to establish bad faith before dismissal with prejudice is appropriate, and I would suggest that the, a number of courts have applied, have imposed dismissal with prejudice without discussing bad faith, and some even saying, notwithstanding good faith, that dismissal with prejudice is appropriate because of the impact on the defendant or the impact on the public interest. Well, Counsel, what, what showing did you make, what showing did the defendant make that would justify dismissal with prejudice? I'm not talking about what the judge, the judge articulated. I'm asking what, what showing did your client make to establish? At the initial status conference, defense counsel said that the deportation was going to ultimately deprive him of all his rights that go along with having his day in court, the right to consult with an attorney, the right to testify in his defense, to be present at trial. So he was articulating a Sixth Amendment impact on the defendant should deportation occur. At that point, deportation had not occurred. But the government says that in the event of a future prosecution, should the defendant be removed and returned to the country, all of those arguments would be available at that time, should you, should your client seek to dismiss the indictment? What, what's wrong with that argument? Well, the government indicted at a, indicted now for, and the defendant shouldn't have to rely on potential arguments in the future, should, which are all quite theoretical since he's been deported. There's no reason to believe that he is going to come back. There's no reason to believe that he's going to come back. And he should have some conclusion to this proceeding. The government brought the indictment, the same executive branch deported him. And so, and the district court here determined that dismissal with prejudice was an appropriate remedy to mostly focusing on the, on the public interest. Where do you, where do you find that in the record? I find that in... What specifically do you say the court found in terms of the public interest or bad faith or harassing conduct by the government? Well, the court talked about the public interest in the grand jury process, the involvement of the citizenry and how this, the deportation adversely impacts that interest in, in public participation and talked about the involvement of the judiciary in the release pending trial that you have, you had a court order that the defendant be released, but that he remained in Massachusetts, which ICE caused him to violate by taking him out of, out of the state and deporting him. And the court also talked about the, the pattern here of the government's activities. And, and that is a, an interest that a number of courts have discussed, including back in 2019 one of the district court judges here described the situation where the United States attorney's office having indicted the defendant runs the risk of removal by ice before conclusion of the prosecution as described it as perhaps an unusual situation. Well, I suggest it is not that unusual now. And in 2021 another district court judge concluded in dismissing a case without prejudice that if ICE continues its practice of removing defendants without regard to ongoing criminal proceedings, restraint in exercising the supervisory power to dismiss without prejudice or with prejudice is likely not to be warranted. Courts in New Mexico and Arizona have discussed the pattern of continuing deportations during the pendency of criminal proceedings as support for dismissal with prejudice. And here last month our office compiled a list of 38 cases, and I believe there are more now in which defendants were removed after release was ordered, but before the criminal case was resolved. Well, let's, let's, let's start on, on day one and assume we have an individual for whom there's reasonable cause to believe the individual has committed a federal crime and there's reason to think that the person is deportable. The government has two options, could indict, could remove. Is there any claim at all that the government has to indict first or has to remove first? No, but there is a third option, Your Honor. But let's stay with this for a second. So suppose the government decides we're going to indict, and then the removal proceedings go along faster or for whatever reasons or the government changes its mind. Why couldn't the government change its mind and say, we're not going to pursue the indictment, no jury's been impaneled yet, there's no prejudice, so we're going to withdraw the indictment, pursue removal, and we'll only prosecute if the person comes back into the country. Why, why isn't, what, what is there that says that the government cannot exercise its discretion to proceed in that manner? Well, it can exercise its discretion, but the question is, does that exercise of discretion have consequences in the criminal proceeding? I'm not contesting that ICE has the authority to take someone into custody and to institute removal proceedings, but there is kind of a third way, there is a way of reconciling. There is nothing that says that ICE must remove immediately. There's a provision that says 90 days after someone is taken into custody. But here, here, here it seems to me the court has said in every case, categorically, once the government files an indictment, then it has lost its ability to do what it could have done the day before it filed the indictment, which is to proceed removal and keep in its back pocket the potential indictment. Well, Why would the government, I think we would need some reason, whether you call it bad faith, public policy, whatever, we need some reason to see the government has lost its right by deciding to remove someone who is removable. Well I think there are public interest and public policy concerns, but And what, what, what exactly is that in the scenario I outlined? They've indicted someone and they decide, well, we can remove him now and we'll wait. He probably won't come back into the country, so we'll never need to indict him and prosecute him. But if he does, given that there's reasonable cause to believe he committed a serious crime, we want to proceed with that prosecution at that time, which may not be necessary now. What, what's, what policy says the government can't exercise its discretion in that manner? Well I think that the courts have generally recognized a public interest in keeping defendants here if criminal proceedings are pending. And if the decision to bring in indictment is a serious undertaking But if that were true, then of the two tracts I described at the outset, the government would always have to proceed with the indictment tract. I think you've agreed that they don't have to proceed and initiate an indictment. And so my question is, if they do initiate the indictment, why do they suddenly lose the ability to backtrack and say, we'll remove and only indict if the person comes back into the country? They don't lose the ability to remove. I'm suggesting that what they lose is the ability to remove before the proceedings are completed. And why? Because the defendant also has an interest in having the charges resolved so things are not hanging over his head. That would be true in the pre-indictment decision making as well. I'm sorry? Sure, go back to step one. The government has two choices at least, indict or remove. I think you agree that that decision is entirely up to the government, which is to say the individual's interest in having the criminal charges resolved now plays no role in countermanding that initial decision. Hence, I ask the question, why do we get a different result post-indictment? I think that once an indictment has been brought, yes, the government has the right to proceed down either path. Once it has chosen to proceed down the indictment path, other considerations come into play, and the government does not lose its right to remove. Name one of those considerations that would not apply in the pre-indictment scenario. Well, you don't have a right to resolution until an indictment has been brought. So the defendant has But the normal Rule 48 procedure is the government can dismiss without prejudice. That's the normal rule in all criminal cases. That is the general rule, but the rule also provides the court with the opportunity to dismiss with prejudice if it feels that to remedy violations of a defendant's constitutional and statutory rights, to promote the public interest, to promote respect for the criminal justice process, and ensure the fair administration of justice. And in Ranieri, the court talked about dismissing with prejudice to protect against fundamental unfairness. So I think that those factors come into play after an indictment has been brought. How is it, I'm still, I'm sorry if I'm not clear enough, but I'm still having trouble understand how the interests of justice are not implicated in the initial decision as to whether to indict or not. But once they indict, they suddenly, the interest of justice similarly says you can't unindict. I understand that in the double jeopardy sequence, if the proceeding had gone on long enough to put the individual at jeopardy, clearly that would trump it. I understand if the government is intentionally trying to jerk someone around acting in bad faith, but I'm having trouble understanding why absent those circumstances, the interest of justice would operate in one timeline but not in the other. Well certain rights don't simply attack, don't attach until an indictment is brought. Speedy trial, for example. So you do have a shift once the indictment has been brought. And the government could, the ICE could still take someone into custody and keep them in the Commonwealth of Massachusetts until the criminal proceeding has been concluded and then remove them because a number of courts have held that the 90 day removal period doesn't begin to run until after the criminal proceedings are completed. I thought your client didn't want that. I thought your client didn't want a scenario where he would simply stay in ICE custody until the criminal proceedings are over. Well he was released by the district court and then picked up by ICE. I'm just saying that the government has alternatives that do not require a black and white choice between indicting and removing. That they can accomplish both goals at the same time, just in a different time frame. Let me ask you, what are we supposed to make of this language of the district court? This is, the opposing counsel has indicated they filed this notice that the defendant would be removed. The court treated that as functionally as a motion to dismiss the pending indictment without prejudice. The court then responds as follows, the government has the power to dismiss a criminal case for any reason or no reason. As this court has previously articulated therein, it is sophistry to both claim to be fully enforcing the law while at the same time quietly deporting a defendant to increase ICE's monthly catch limit. What does that have to do with the rights of the defendant once the defendant has been indicted? There's not, as I read it, there's not a word in there about concern for the defendant. It seems like it's an expression of offense at what the government is doing as a policy matter. That doesn't seem to have much legal analysis in it. I think it's concern for the public interest, because that sentence starts, as this court has previously articulated. And that articulation came in the two status conference hearings that were held before the order of dismissal. And it was in those proceedings that the court was completing the criminal prosecution in the involvement of the citizenry in the grand jury process that would be perhaps disrespected by the dismiss, by the removal. So when you, this language about to increase ICE's monthly catch limit, is that a characterization of bad faith on the part of the government in doing what it's doing? Is that what that's all about? I know you can't read the judge's mind, but how do you interpret it? And I think that it's perhaps irritation at the pattern, because at the second hearing the judge also noted that in his court session there had been two or three situations that were similar to this. So it is I think the pattern, which a number of courts have discussed as supporting dismissal with prejudice, that the only way you're going to get the government's attention to remedy this situation is by dismissing with prejudice. Do you take a position on this so-called standing order here as it was modified? Do you defend it as appropriate? We don't believe that the standing order is at issue in this case. If the government wishes to bring some kind of action regarding the standing order, that's up to the government. But the order that's at issue in this case is the order that the court did issue. On the, okay, the final order that he issued in writing, but then that, at least your argument is references the two prior status conferences. So your argument is that the standing order doesn't stand in any individual cases? It does not stand in this case because there's a specific order. What's it mean that it's a standing order? It is an expression of how the court is going to proceed, but the court did not proceed that way in this case. In every case. Isn't it an order that says in every case that meets these criteria the rule will be as follows? Yes, but he modified that in this case by his specific orders in this case. Is the standing order still standing? I checked yesterday and the May 8th order, yes, was still standing. But it is not, and his final statements at the second hearing were that the standing order was still standing. And they were, essentially, I'm ordering the provision of notice and we'll take it from there. So, which suggests that it was not the standing order that he was following, but the orders that he was issuing in this case. Thank you.  Yes, Donald Lockhart for the government. In answer to the last point, the case-specific order of dismissal is inextricably tied and flows directly from the court's modified standing order, which sets up the equation that we've discussed. If that case-specific order fails as a matter of law, there's no reason to refrain from striking down the modified standing order or directing the district court to take down the May 8th order from its website, where as counsel noted, it still exists as of yesterday. It would make no sense to require the government to go through some separate parallel civil action to undo an order that's just so patently unlawful for the reasons that we've said in our brief. Second, to Judge Lopez's point, he pointed out some of the language in the June 23rd order about the catch limit and so forth. I would ask you to look also at the language the judge used elsewhere, which dovetails with that language where he says, we've ceded gripe with what's happening here, and it's a gripe that runs directly contrary to Trump v. United States, which says that we, the executive branch, have essentially almost unfettered ability to decide what prosecutions to pursue. He said also that we are impairing the cherished and constitutionally guaranteed right of all Americans to adjudicate the facts in every criminal proceeding, which is a rather surprising statement, because although Americans have the right to sit as jurors, it is not the case that Americans have the right to adjudicate the facts in every criminal proceeding. Defendants plead guilty, we dismiss charges, and I guess from the judge's perspective, we are thereby systematically depriving the citizenry of their right to adjudicate facts. These are not lawful bases for dismissing with prejudice. Unless there are further questions, I'll rest on the brief.